[Cite as *N.A. v. J.P.*, 2019-Ohio-4423.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

NICHOLAS A., et al.

      Plaintiffs-Appellees

-vs-

JOSEPH P., et al.

      Defendants-Appellants

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 2019 AP 03 0009

O P I N I O N

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2017 CC 00061

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 25, 2019

APPEARANCES:

For Plaintiff-Appellee Samantha W.

SHARON BUCKLEY-MIRHAIDARI
152 N. Broadway, Suite 200
New Philadelphia, Ohio 44663

Guardian Ad Litem

KAREN DUMMERMUTH
349 East High Avenue, Box 484
New Philadelphia, Ohio 44663

For Defendant-Appellant Joseph P.

DAN GUINN
GUINN LAW FIRM, LLC
PO Box 804
New Philadelphia, Ohio 44663.

*Wise, J.*

{¶1}    Appellant Joseph P. appeals from the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted legal custody of his daughter to a third party non-relative, Appellee Samantha W, who is the ex-fiancé of the girl's maternal uncle. The relevant facts leading to this appeal are as follows.

{¶2}    Appellant Joseph P. is the biological father of the minor child L.A., born in 2014. The mother of the child, and former spouse of Joseph P., is Ivory A.

{¶3}    Appellant and Ivory A. met online in early 2011. Ivory A. moved in with appellant and his mother in September 2013, and the couple married on November 15, 2013. However, just a month or so later, Ivory A. left appellant and returned to Jackson, Ohio, to reside with her father. In early January 2014, shortly after Ivory A. told appellant she was pregnant, she indicated she would not be coming back to live with him.

{¶4}    Ivory A. then filed a complaint for divorce in the Tuscarawas County Court of Common Pleas, under a separate case number. Although appellant was properly served with notice of the proceedings, he did not respond or appear at the hearing. Ivory A. was named residential parent of the child in the decree issued on August 5, 2014. Appellant did not thereafter file for visitation of the minor child under the divorce case number.

{¶5}    Ivory A. has a history of alcohol and drug abuse, and was apparently charged in 2014 or 2015 with child endangering for driving under the influence of alcohol with L.A. in her car. At some point in the spring of 2015, Ivory A. began a romantic relationship with a registered sex offender. In August 2016, she abandoned the child and left her with her father so that she could be with her boyfriend. Because Ivory A.'s father

was unable to care for L.A., the child was taken in by Nicholas A. (the brother of Ivory A. and maternal uncle of the child) and his then-girlfriend, Appellee Samantha W. Appellant later testified that he was unaware of this arrangement until March 2017. Tr. 4 at 32-33.

{¶6}    Nicholas A., the maternal uncle of L.A., filed a complaint for emergency custody of the child in the Tuscarawas County Court of Common Pleas, Juvenile Division, on March 14, 2017. Appellant then filed a motion to modify parental rights and responsibilities on April 17, 2017.

{¶7}    Via an order of the trial court issued April 27, 2017, Nicholas A. was granted temporary custody of the child. His then-girlfriend, Appellee Samantha W., lived with him and helped care for L.A.

{¶8}    Appellant thereafter obtained supervised visits with L.A., which he began exercising in May 2017. Appellant's visits apparently went well, at least to the extent that the supervisor did not have to intervene. Tr. at 34. Appellant's mother also came to some of the visits and got along well with the minor child. Tr. 4 at 35. However, appellant's mother also had to take control during some of the visits. Tr. I at 26.

{¶9}    In the summer of 2017, appellant began to receive unsupervised parenting time with the minor child. Tr. 4 at 36. These visits were eventually increased to every other weekend after appellant completed a home inspection. *Id.*

{¶10} At some point in the fall of 2017, Nicholas and Samantha ceased living together. Samantha thereafter intervened as a party in the case, and the trial court granted her temporary legal custody of L.A. on March 9, 2018. Via an *ex parte* magistrate's order issued on the same day, appellant's home visits were suspended and visitation was returned to supervised status.

{¶11} The issue of full custody proceeded to hearings before the magistrate February 27, 2018 ("Tr. 1"), May 8, 2018 ("Tr. 2"), June 28, 2018 ("Tr. 3"), and September 25, 2018 ("Tr. 4"). At the February 27th hearing, the magistrate noted that appellant did not intend to reach an agreement regarding custody going to Samantha W. *See* Tr. 1 at 11. At the June 28th hearing, Nicholas (the maternal uncle) appeared with counsel but left the courtroom with his attorney after indicating he was voluntarily withdrawing his request for custody. *See* Tr. 2 at 1-5.

{¶12} In her 18-page written decision issued November 13, 2018, the magistrate recommended that legal custody of L.A. be placed with Samantha W., concluding: "Ivory A. and [Appellant] are found to be 'unsuitable' as parents for [L.A.]." Magistrate's Decision at 18.

{¶13} Appellant filed a Civ.R. 53 objection on November 19, 2018.[1] Appellant filed a supplemental objection on January 29, 2019, following procurement of the four volumes of transcripts.

{¶14} The trial court thereafter approved and adopted the magistrate's decision in full, thus granting Appellee Samantha W. legal custody. Appellant was granted supervised and Skype visitation.

{¶15} On March 4, 2019, Appellant Joseph filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶16} "I. THE COURT ERRED IN DETERMINING THAT THE APPELLANT WAS UNSUITABLE AS A PARENT AND, THUS, SHOULD NOT HAVE CUSTODY OF HIS MINOR CHILD."

---

[1] Ivory A. has not filed an appeal in this matter.

I.

**{¶17}** In his sole Assignment of Error, appellant argues the trial court erred in finding him "unsuitable" to presently obtain custody of his daughter, L.A. We disagree.

**{¶18}** Ohio has long recognized the general rule that "parent has a right to the custody of his child against all other persons unless and until it is shown that the parent has relinquished this right by contract, forfeited it by abandonment, or lost it because of his unfitness or inability to provide a suitable home for [the] child." *In re Duffy*, 78 Ohio App. 16, 68 N.E.2d 842 (1946). The Ohio Supreme Court, in *In re Perales* (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047, further addressed the issues surrounding child custody proceedings between a parent and a nonparent, holding as follows at the syllabus: "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability-that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."

**{¶19}** Similarly, in *In re Hockstok,* 98 Ohio St.3d 238, 781 N.E.2d 971, 2002–Ohio–7208, syllabus, the Ohio Supreme Court held that a trial court must make a parental-unsuitability determination on the record before awarding legal custody to a nonparent. Such a determination of unsuitability must be supported by a preponderance of the evidence. *Id.* at ¶ 17, 781 N.E.2d 971. As long as the trial court's determination of unsuitability is supported by a substantial amount of credible and competent evidence,

an appellate court will not disturb it. *Radka v. McFall,* 9th Dist. Lorain No. 04CA008438, 2004–Ohio–5181, ¶ 7, citing *In re Adams*, 9th Dist. Wayne No. 01CA0026, 2001–Ohio–1652.

**{¶20}** Furthermore, in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. *See In re Fout*, 5th Dist. Delaware No. 04 CA-F 05036, 2005-Ohio-4344, ¶ 6, citing *In re Rossantelli Children,* 5th Dist. Delaware No. 01CAF12072, 2002–Ohio–2525 (additional citations omitted). Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. In analyzing the difficult decisions that must be made by trial courts in these situations, we remain mindful that unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *See In re A.C.,* 12th Dist. Butler No. CA2006–12–105, 2007–Ohio–3350 ¶ 14.

**{¶21}** A review of the record before us reveals a number of concerns regarding appellant. Even though he was advanced for a time from supervised visits with L.A. to in-home unsupervised visits, there were indicators of a hoarding problem throughout the house in which he was living when the hearings commenced. L.A. was provided with a bed set up in the dining room, next to a highly-cluttered kitchen. In addition, at the September 25, 2018 hearing, it abruptly came to light that appellant was moving to a residence in Oak Hill, Ohio. No home study was done. Appellant intended to live there with his mother. At the time of the final hearing, appellant was working at a job at a food

processing plant making $10.34 per hour, but he did not yet have health insurance available for the child. At the age of forty-five, appellant had not had a driver's license for more than twenty years. He testified that he had a bachelor's degree in early childhood education, but he conceded that the college was "not an accredited school." Tr. 4 at 59. Evidence was also adduced that during previous attempted Skype chats, appellant seemed unable to maintain sustained verbal interaction with the child. The director of the Caldwell visitation center rated the supervised visits by appellant as "3" on a scale of 1 to 10. Tr. 4 at 149.

**{¶22}** Appellant was also involved in a somewhat puzzling incident in February 2018, when he and his mother took the child to the hospital for a SANE examination. L.A. insisted nothing was wrong, but unidentified male "touch" DNA traces (not appellant's) were found in her underwear. Appellant then failed to provide authorities with the name of a male individual, J.T., who may have been around the child during appellant's visits. Even though a hearing was scheduled for February 27, 2018, appellant did not tell Nicholas, Appellee Samantha, the court, or the GAL about the hospital examination, and he simply returned the child after the weekend visitation. Some of the medical and law enforcement professionals involved in the incident thereafter expressed concern that appellant was attempting to stage a sexual abuse claim in order to obtain custody.

**{¶23}** Most important, however, is the question of appellant's effective abandonment of the child from the time of her birth in 2014 until appellant's re-involvement in 2017. We note R.C. 2151.011(C) states: "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume

contact with the child after that period of ninety days." Abandonment of a child has also been defined as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. *See In re J.J.F,* 5TH Dist. Stark No. 2009CA00133, 2009-Ohio-4736, ¶45 (citations omitted).

**{¶24}** During the hearings in the case *sub judice*, appellant tried to blame his original lack of participation in the divorce on his alleged lack of transportation at the time. He further claimed that he did not know how to ask for post-decree visitation, even though the Tuscarawas County Court of Common Pleas provides online forms and basic guidance on child custody issues. He also claimed he could not locate the child's mother, Ivory, and he otherwise worried she would not allow him to see the child. He thus remained completely uninvolved in L.A.'s young life for a span of roughly three years, and he now insists that he was "prevented" from seeing the child. Appellant's Brief at 14, 16.

**{¶25}** Our overall assessment is that as of late, appellant appears to have taken a more responsible approach toward his parental duties. In the meantime, the juvenile court's disposition of legal custody to a relative or third party leaves intact for him residual parental rights, privileges, and responsibilities concerning L.A. *See In re: N.P.* 9th Dist. Summit No. 21707, 2004–Ohio–110, ¶ 23 (additional citations and internal quotations omitted). Nonetheless, in this instance, upon review of the record and the findings of fact and conclusions of law therein, we find no basis to alter the decision of the trial court, based on the adoption of the magistrate's decision, and we conclude the grant of legal

custody to Samantha W. was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.[2]

**{¶26}** Appellant's sole Assignment of Error is therefore overruled.

**{¶27}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 1008

---

[2]  The thrust of appellant's argument goes to the issue of parental unsuitability, rather than a challenge to the trial court's "best interest" analysis. However, in the interest of justice, upon review, we have found no reversible error under the R.C. 3109.04(F)(1) best interest factors. Among other things, we are persuaded from the record that Samantha W. clearly has been the one consistently stable adult figure in L.A.'s life, resulting in significant growth and development in various areas in the child's life, and we note the guardian ad litem has recommended legal custody to Samantha accordingly.